# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8200 | **DATE** | 4/29/2003 |
| **CASE TITLE** | Ruttenberg vs. United States Life Insurance Company | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Status hearing held and continued to 6/23/03 at 9:30 a.m. for scheduling conference. Enter Memorandum Opinion and Order. Defendant's motion to dismiss [4-1] is granted in part and denied in part. The Court concludes that plaintiff's state law claims are preempted by ERISA and, therefore, strikes plaintiff's jury demand. Plaintiff's amended complaint is dismissed without prejudice, with leave to file a second amended complaint alleging causes of action under ERISA within 21 days. Defendant shall then have 21 days to answer or otherwise plead.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAY 0 1 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 31 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 4/29/2003 | |
| | | 03 MAY -1 AM 8: 26 | date mailed notice | |
| MD | courtroom deputy's initials | Date/time received in central Clerk's Office | MD mailing deputy initials | |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDREW RUTTENBERG, <br><br> Plaintiff, <br><br> vs. <br><br> UNITED STATES LIFE INSURANCE COMPANY IN THE CITY OF NEW YORK, d/b/a UNITED STATES LIFE, a subsidiary of American General Corporation, <br><br> Defendant. | No. 01 C 8200 <br> Judge Joan H. Lefkow |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Andrew Ruttenberg ("Ruttenberg"), filed a two-count complaint against defendant, United States Life Insurance Company in the City of New York d/b/a United States Life ("United States Life"). According to the complaint, Ruttenberg was a market maker engaged in trading financial instruments on the Chicago commodity and financial exchanges until February 12, 2001 when he ceased working due to asthma and vocal cord dysfunction. Ruttenberg made a claim for disability benefits under a group insurance policy (no. G225239) (the "Plan") issued by United States Life on February 1, 2001, for the benefit of market makers affiliated with SMW Trading Company ("SMW"). United States Life denied the claim. Ruttenberg filed the instant federal diversity action against United State Life, alleging breach of contract (Count I) and vexatious refusal to pay pursuant to 215 ILCS 5/155 (Count II). On August 21, 2002, the court, *sua sponte*, dismissed Ruttenberg's complaint without prejudice for lack of subject matter jurisdiction. On September 10, 2002, the court granted Ruttenberg's

motion for leave to file an amended complaint (alleging the same counts as the original complaint), which he filed that same day, and the parties agreed to an administrative remand of Ruttenberg's claim for long-term disability benefits so that United States Life's administrator, Disability Reinsurance Management Services, Inc. ("RMS"), could address the claim. RMS determined that Ruttenberg did not meet the definition of disability and no benefits could be issued under the group insurance policy. RMS also informed Ruttenberg's counsel of the right to appeal that determination. United States Life has now moved, under Rule 12(b)(6), Fed. R. Civ. P., to dismiss Ruttenberg's state law claims as pre-empted by and/or not exhausted under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001 *et seq.*, and to strike Ruttenberg's jury demand. As stated below, United States Life's motion is granted in part and denied in part.

## DISCUSSION

The question for the court to determine on this motion is whether the group insurance policy through which Ruttenberg was covered is an "employee welfare benefit plan" under ERISA. If it was such a plan, Ruttenberg's state law claims are preempted by ERISA and he was required to exhaust any administrative remedies. If the group insurance policy was not an employee welfare plan, Ruttenberg may proceed on his state law claims. The statutory definition of an "employee welfare benefit plan" is "any plan, fund, or program . . . established or maintained by an employer or by an employee organization . . . for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability,

death or unemployment [etc.]."[1] 29 U.S.C. § 1002(1)(A); *Brundage-Peterson* v. *Compcare Health Servs. Ins. Corp.*, 877 F.2d 509, 509 (7th Cir. 1989). Five elements are required to establish an employee welfare benefit plan: (1) a plan fund or program, (2) established or maintained (3) by an employer or by an employee organization, or by both (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment, or vacation benefits, (5) to participants or their beneficiaries. *Ed Miniat, Inc.* v. *Globe Life Ins. Co.*, 805 F.2d 732, 738 (7th Cir. 1987). The Department of Labor has promulgated regulations clarifying when an employee welfare benefit plan does *not* exist. *See* 29 C.F.R. § 2510.3-1(j). The regulations state that an employee welfare benefit plan would not include a plan under which,

> (1) No contributions are made by an employer or employee organization;
> (2) Participation [in] the program is completely voluntary for employees or members;
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

(*Id.*)

In its August 21 minute order, the court asked for additional evidence as to who pays the premiums on the Plan at issue here. Some of the evidence submitted by United States Life

---

[1] The term "participant" under ERISA means "any employee . . . of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer . . . . 29 U.S.C. § 1002(7). Employee is defined as "any individual employed by an employer." 29 U.S.C. § 1002(6). The term "beneficiary" is defined as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

(including an affidavit) cannot be considered on this motion to dismiss. *See In the Matter of Wade*, 969 F.2d 241, 249 (7th Cir. 1992). The court on this motion to dismiss considers the amended complaint and any documents attached or incorporated by reference, including the Certificate of Insurance issued to Ruttenberg (which was attached to Ruttenberg's original complaint and incorporated by reference into his amended complaint). *See Tierney v. Vahle*, 304 F.3d 734, 737 (7th Cir. 2002). Moreover, the court can consider new factual assertions by Ruttenberg "by affidavit or brief" so long as they do not contradict his compliant. *Hrubec v. National R.R. Passenger Corp.*, 981 F.2d 962, 963-64 (7th Cir. 1992).

United States Life argues that the Plan at issue is an "employee welfare benefit plan" because SMW, as the employer, makes contributions for most of the employees under the Plan and because of SMW's administrative involvement, specifically that SMW created the group insurance contract and designated which employees were eligible to enroll. Ruttenberg, in response, argues that (1) the Plan is not an ERISA plan because it was not "established or maintained" by SMW and (2) because he is an independent trader (given "Class 3 status under the Plan") who alone pays all of his premiums, he is not an employee of SMW and, therefore, not a participant or beneficiary in an employee welfare benefit plan.

The court rejects Ruttenberg's first claim that this Plan is outside of ERISA, as it is clear that the Plan is "established or maintained" by SMW and that the safe harbor provisions do not apply. To prevail on Ruttenberg's claim that this plan is outside of the reach of ERISA, "employer neutrality is essential." *Turnoy v. Liberty Life Assurance Co. of Boston*, No.

4

02 C 6066, 2003 WL 223309, at *3 (N.D. Ill. Jan. 30, 2003), citing *Russo v. B & B Catering, Inc.*, 209 F. Supp. 2d 857, 860 (N.D. Ill. 2002). Only a "minimal level of employer involvement is necessary to trigger ERISA." *Russo*, 209 F. Supp. 2d at 860.

In *Brundage-Peterson*, the Seventh Circuit examined the two extremes of welfare benefits plans. On the one hand, an employer could offer no welfare benefit plan and leave the employee to shop around for his or her own health insurance, although "the employer could take a few steps beyond this and still remain outside the scope of [ERISA]–such steps as distributing advertising brochures from insurance providers or answering questions of its employees concerning insurance, or even deducting the insurance premiums from its employees' paychecks and remitting them to the insurers." 877 F.2d at 510. On the other end of the extreme was an employer "who provides welfare benefits directly to its employees . . . ." *Id.* The situation presented here is somewhere in between, as was the case in *Brundage-Peterson*. The court there found that the employer had created an ERISA plan because

> An employer who creates by contract with an insurance company a group insurance plan and designates which employees are eligible to enroll in it is outside the safe harbor created by the Department of Labor regulation. This is especially clear when in addition, as was done here, the employer helps defray the employee's insurance cost . . . .

*Id.* at 511.

This is precisely the situation present here. SMW contractually created a group insurance plan, acting as the "Participating Employer," and SMW specifically designated which employees were eligible to enroll in the plan, with the same limitation on enrollment as in *Brundage-Peterson*: "the eligibility requirement of being an employee of more than thirty days' standing. . . . ." *Id.* at 510. Additionally, SMW funded the plan for most of its employees (Classes 1, 2 and

4). While true that the particular class of employees to which Ruttenberg belongs received no funding, this does not negate the fact that contributions are made by the employer to the Plan itself. These undisputed facts compel the court to conclude that this Plan is, in fact, an employee welfare benefit plan implicating ERISA.

Moving on, Ruttenberg's claim that he is an independent trader and not an "employee" of SMW, is problematic. The Certificate of Insurance given to Ruttenberg (and incorporated by reference into his amended complaint) specifically states,

> **Employee Eligibility**
> Eligible Classes of Employees
> All full-time employees of the Participating Employer who are:
> • managers and officers earning over $20,000 annually
> • traders who report earnings on their 1099 form
> • firm traders who report prior years on their 1099 DEE form
> but not those who are temporary, part-time or seasonal.
>
> **Date Employees are Eligible for Insurance**
> Each employee in an eligible class on February 1, 2001 will be eligible for insurance on that date.
> Each employee who enters an eligible class after February 1, 2001 will be eligible for insurance on the first day after he completes one month of full-time work in such class.

(Compl. at Ex. A.) If, as Ruttenberg's alleges, he was not an employee of SMW, it would appear as if he would have no rights under the Plan at all, as the plan only applies to the eligible class of employees listed above. This is not a situation where there are separate plans, one for employees and one for non-employees. Instead, the plan is open to eligible employees, including "traders who report earnings on their 1099 form." Ruttenberg attempts to argue that the classification is different for him because "independent traders" are listed under "Class 3" and this is entirely separate from the other classes, which cover other employees. Class 3 traders, however, are

6

included in the Plan and are only eligible because they are considered "employees" under the Plan's terms.

Even if, however, Ruttenberg's assertion in his amended complaint that he is "self-employed" is taken as true, which it must be, the court concludes that Ruttenberg would qualify as a "participant" under ERISA, a conclusion other courts have reached concerning independent contractors. *See, e.g., Hollis v. Provident Life and Accident Ins. Co.*, 259 F.3d 410, 415-16 (5th Cir. 2001), *cert. denied*, _ U.S. _, 122 S.Ct. 1538 (2002); *Turnoy*, 2003 WL 223309, at *5. Ruttenberg attempts to recover under the policy issued to SMW. Accordingly, if he is not an employee, he must be "a person . . . designated by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

This was the conclusion reached by the courts in both *Hollis* and *Turnoy*. In *Hollis*, the court found an independent contractor was a beneficiary under a disability insurance policy because "he was entitled to receive benefits under that policy, he was entitled to receive benefits under that policy in the event of total disability, and he did, in fact, receive benefits from Provident for several months. Therefore, under the definition's plain language, Hollis is a beneficiary." 259 F.3d at 415. In distinguishing another Fifth Circuit case in which an independent contractor was found not to be a beneficiary, the court noted

> In that case, Weaver, an independent contractor, sued his employer and the insurance carrier obligated to pay benefits under the ERISA benefit plan. *See Weaver*, [v. *Employers Underwriters, Inc.*, 13 F.3d 172, 176 (5th Cir. 1994)]. We decided that ERISA did not preempt state law in that case because Weaver was neither a participant nor a beneficiary. *See id.* at 176. We said that Weaver was not a participant precisely because he was an independent contractor. After all, ERISA defines a participant as "any *employee* . . . who is or may become entitled to a benefit." 29 U.S.C § 1002(8). However, we gave an entirely different reason why Weaver was not a beneficiary. *See id.* at 177. Weaver was not a beneficiary

7

> because the benefit plan did not designate him as a beneficiary. *See id.* In other words, Weaver was not a person who could ever become entitled to benefits; thus, he did not meet the definition of beneficiary.
>
> For this particular issue, what we did not say in *Weaver* is more important than what we said. We did not say that his status as an independent contractor had anything to do with him not being a beneficiary. In fact, implicit in our holding in *Weaver* is that an independent contractor can be a beneficiary so long as he is a person "who is or may become entitled to a benefit" under the plan. Therefore, Hollis's independent contractor status does not preclude him from being a beneficiary.

*Id.* at 415.[2] The court in *Turnoy* relied on this reasoning in *Hollis* to reach a similar conclusion that an independent contractor qualified as a beneficiary under ERISA. *See also, Peterson v. Equitable Life Assur. Society of U.S.*, 57 F. Supp. 2d 692, 705 (W.D. Wis. 1999).

This analysis applies to Ruttenberg's claim here. Even if he is not an employee of SMW, he is attempting to receive benefits under the ERISA Plan through which SMW is the participating employer. Ruttenberg, therefore, could only recover under the Plan if he was "entitled to a benefit thereunder." Accordingly, the court concludes that ERISA would apply to Ruttenberg as an ERISA beneficiary.

Because of the court's conclusion that ERISA applies to Ruttenberg's claim, it must now examine whether Ruttenberg's claims are, in fact, preempted under ERISA. ERISA preempts any state law claim that "relates to" any employee welfare benefit plan. *See* 29 U.S.C. § 1144(a). Ruttenberg does not dispute that his breach of contract claim would be preempted. *E.g., Tomcyzk v. Blue Cross & Blue Shield of Wis.*, 951 F.2d 771, 777 (7th Cir. 1991); *Brundage-*

---

[2]The court in *Hollis* rejected any notion that a beneficiary is limited to people such as a worker's spouse or children. 259 F.3d at 416. This is the majority view in the Circuit Courts of Appeal. *E.g., Wolk v. Unum Life Ins. of Am.*, 186 F.3d 352, 356 (3d Cir. 1999); *Engelhardt v. Paul Revere Life Ins. Co.*, 139 F.3d 1346, 1351 (11th Cir. 1998); *Prudential Ins. Co. of Am. v. Doe*, 76 F.3d 206, 208 (8th Cir. 1996); *Peterson v. American Life and Health Ins. Co.*, 48 F.3d 404, 409 (9th Cir. 1995); *but see, Darden v. Nationwide Mut. Ins. Co.*, 796 F.2d 701, 704 n. 3 (4th Cir. 1986).

*Peterson*, 877 F.2d at 510. He does, however, assert that his claim for vexatious refusal to pay pursuant to 215 ILCS 5/155 would not be preempted. This view has been soundly rejected by courts of this district. *E.g., Turnoy*, 2003 WL 223309, at *6-*7; *Casey v. Unum Life Ins. Co. of Am.*, No. 01 C 5419, 2002 WL 31356453, at *3-*5 (N.D. Ill. Oct. 17, 2002); *Dobner v. Health Care Serv. Corp.*, No. 01 C 7968, 2002 WL 1348910, at *4 (N.D. Ill. June 19, 2002); *Cencula v. John Alden Life Ins. Co.*, 174 F. Supp. 2d 794, 799-800 (2001); *Gawrysh v. CNA Ins. Cos.*, 978 F. Supp. 790, 793 (N.D. Ill. 1997); *Lutheran Gen. Hosp., Inc. v. Massachusetts Mut. Life Ins. Co.*, No. 95 C 2504, 1996 WL 124449, at *4 (N.D. Ill. March 12, 1999); *Goodhart v. Benefit Trust Life Ins. Co.*, No. 90 C 5110, 1990 WL 205821, at *3 (N.D. Ill. Nov. 29, 1990); *Buehler, Ltd. v. Home Life Ins. Co.*, 722 F. Supp. 1554, 1561-62 (N.D. Ill. 1989).

Ruttenberg's argument against preemption centers on the ERISA savings clause, which he claims "saves" his claim under § 5/155 from preemption because the statute directly regulates insurance.

> A state law will only be redeemed under the "savings clause" if all prongs of a three-part test are met: (1) a commonsense interpretation of the state law must suggest it regulates insurance, (2) the state law must regulate the "business of insurance" as defined by case law interpreting the McCarran-Ferguson Act and, (3) allowing the state claim to proceed would undermine ERISA's civil enforcement procedures.

*Gawrysh*, 978 F. Supp. at 793, citing *Goodhart*, 1990 WL 205821, at *3-*4; *Buehler, Ltd.*, 722 F. Supp. at 1558-59. The court need not reach decisions on parts 1 and 2 of the above prongs because § 155 clearly fails under the third prong.

Section 1132 of ERISA provides an extensive list of remedies for a party alleging the claims that Ruttenberg brings here. *E.g., Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 53 (1987)

("The six carefully integrated civil enforcement provisions found in [Section 1132(a)] . . . provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly."). Moreover, § 5/155 allows for remedies specifically rejected in ERISA. *See Buehler*, 722 F. Supp. at 1562 ("Section 155 allows a plaintiff to recover a substantial statutory penalty much akin to punitive damages and completely at odds with ERISA's implicit prohibition on punitive damages recoveries."). Accordingly, the court concludes that Ruttenberg's § 5/155 claim does not fall under the savings clause.

After finding that Ruttenberg's state law claims are preempted by ERISA, the court must strike Ruttenberg's jury demand, as there is no right to a jury trial in an ERISA case. *E.g.*, *Mathews v. Sears Pension Plan*, 144 F.3d 461, 468 (7th Cir. 1998). Moreover, the court must address whether this suit may be brought under ERISA, *i.e.*, whether Ruttenberg has exhausted his administrative remedies. Ruttenberg claims that, after his initial complaint was dismissed by this court, his claim was reexamined by United States Life and rejected for a second time. United States Life argues that after RMS, the Plan administrator, denied Ruttenberg's claim, it presented him with an opportunity to appeal, which he did not do. United States Life maintains that this failure to appeal illustrates that all administrative remedies have not been exhausted.

Ruttenberg makes two arguments in response to his failure to appeal his denial of benefits, claiming (1) that any appeal would have been "futile" and (2) that, because the invitation to appeal was not mandatory, it was not required based on *Gallegos v. Mt. Sinai Medical Center*, 210 F.3d 803, 810 (7th Cir. 2000), *cert. denied* 531 U.S. 827 (2000). Starting with the second argument first, *Gallegos* is clearly distinguishable. The court there stated that a theory of estoppel could apply to a situation in which an insured, who was unrepresented by

10

counsel, failed to file an appeal because of language that made the appeal seem optional, such as "you may have [your claim] reviewed . . . ." *Id.* at 810-11. The court rejected the application of this theory to the plaintiff in *Gallegos* because the insured did not demonstrate that she relied on any such misrepresentations. *Id.* at 810-11. Here, Ruttenberg has been represented by counsel and has been aware of the exhaustion issue since United States Life filed its original motion to dismiss. Ruttenberg has not been victimized by any such misrepresentation. The court rejects this argument.

The issue of futility, at least for purposes of this motion, is more difficult. In arguing that further appeals would be futile, Ruttenberg claims that "[a]ny further appeal would be pointless and would serve to further delay this matter which involves an individual who has now been waiting more than two years to receive benefits from U.S. Life after he became disabled from his regular occupation in February 2001." (Pl. Resp. at 6.) As United States Life points out, on its own, this is insufficient to illustrate futility. *See Robyns v. Reliance Standards Life Ins. Co.*, 130 F.3d 1231, 1238 (7th Cir. 1997) ("to satisfy the futility exception to the exhaustion requirement, a plaintiff must show that it is certain that his claim will be denied on appeal, not merely that he doubts that an appeal will result in a different decision."). Procedurally, however, this motion is only to dismiss. At this stage Ruttenberg is not required to prove exhaustion or futility. While the court would normally look to his complaint to determine if futility and/or exhaustion had been adequately pled, here the complaint mentions neither because it was brought under state law and not ERISA. In short, its too early for the court to determine whether any such further exhaustion requirements would have been futile. Therefore, the court will dismiss Ruttenberg's amended complaint without prejudice with leave to file a second amended

11

complaint alleging causes of action under ERISA. If, as United States Life argues, futility would not apply, then the court would anticipate quick disposition of this claim on summary judgment.

## CONCLUSION

For the reasons stated above, United States Life's motion to dismiss is granted in part and denied in part [#4]. The court concludes that Ruttenberg's state law claims are preempted by ERISA and, therefore, strikes Ruttenberg's jury demand. Ruttenberg's amended complaint is dismissed without prejudice, with leave to file an second amended complaint alleging causes of action under ERISA within 21 days. United States Life shall then have 21 days to answer or otherwise plead. This case shall be called for status on June 23, 2003 at 9:30 a.m.

ENTER: _Joan H. Lefkow_
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: April 28, 2003

12